# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAQUIS SEALE, NICK VASQUEZ, ANNETTE BAKER, JEFF LAMOREE, KATHRYN MAJOR, NATIVIDAD CONCEPCION, XUE SHI LIN, and JESSE FRIEDMAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ALTICE USA, INC.; CEBRIDGE TELECOM CA, LLC (D/B/A SUDDENLINK COMMUNICATIONS); and CSC HOLDINGS, LLC (D/B/A OPTIMUM), <br><br> Defendants. | CIVIL ACTION NO. _____ <br><br><br> **NOTICE OF REMOVAL** |

TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, AND TO PLAINTIFFS, DEFENDANTS, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Intervenor Defendant Madison, WV ("Madison"), hereby removes to this Court the state-court action described below.

## STATEMENT OF JURISDICTION

This is a civil action for which this Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), and for which removal to this Court is appropriate pursuant to 28 U.S.C. §§ 1441 1446, and 1453, as discussed in more detail below.

## BASIS FOR REMOVAL: CLASS ACTION FAIRNESS ACT (CAFA)

1. This removal meets the requirement of minimal diversity under CAFA: at least one putative class member must be a citizen of a state different from any defendant. Intervenor Defendant

Madison is a West Virginia municipality. Defendants are Delaware corporations with their principal place of business in New York. Named Plaintiffs / Class Representatives are residents of California, Connecticut, New Jersey, and New York, who purport to represent a class of Defendants' TV and internet customers in those states plus Arizona, Arkansas, Idaho, Kansas, Kentucky, Louisiana, Massachusetts, Mississippi, Missouri, Nevada, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, and West Virginia. Intervenor Defendant does not have access to the Class Representatives' or Class Members' street and post office addresses.

2.  This case in New Jersey state court began on May 3, 2021 as a *California* state court putative class action filed against Defendants (d/b/a "Suddenlink" and "Optimum") in the Superior Court of the State of California, County of Humboldt, under Case Number CV2100639, on behalf of a class of Defendants' *California* internet customers. Two related additional suits were subsequently filed in New York and California federal courts on behalf of classes of Defendants' *California*, *New York*, and *Connecticut* customers.[1]

3.  On August 18, 2021, Defendants filed in the United States District Court for the Northern District of California a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, which will be heavily quoted herein.[2]

4.  Following removal, Defendants and their affiliates came under heavy pressure regarding Suddenlink's abysmal cable TV, internet, and telephone service in West Virginia,[3] part of which

---

[1] *Concepcion et al. v. Altice USA, Inc. and CSC Holdings, LLC (D/B/A Optimum) et al.*, Case No. 1:22-cv-4308 in the United States District Court for the Eastern District of New York (filed July 22, 2022 for a class of Defendants' New York and Connecticut internet customers), and *Baker et al v. Cebridge Telecomm CA, LLC (D/B/A/ Suddenlink and Optimum) and Altice, USA, Inc. et al.*, Case No. 3:22-cv-4346-EMC in the United States District Court for the Northern District of California (filed July 27, 2022 for a class of Defendants' California cable customers).
[2] Attachment A Exhibit 1 (the "*Vasquez* Removal").
[3] After an extensive hearing, the West Virginia Public Service Commission (the "Commission") found that Defendants failed "to provide safe, adequate and reliable service … by, *inter alia,* intentionally reducing its maintenance work and maintenance budget, reducing full-time employees, changing its methods of communicating with its subscribers

is provided under cable TV franchise agreements with Intervenor Defendant Madison and other West Virginia municipalities.[4] Madison's franchise agreement provides that Defendants must give Madison notice of cable TV rate modifications or additional charges 30 days in advance,[5] which would allow Madison to complain to the West Virginia Public Service Commission if the additional charge is unjust, unreasonable, or discriminatory.[6] Consistent with their pattern of sneaky and unlawful conduct,[7] Defendants never gave Madison notice of these cable TV charges.

5.  Unlike in California, Connecticut, New York, and New Jersey, Defendants have a monopoly in their telephone, cable, and internet service areas in West Virginia, so West Virginia customers must uproot and move outside Defendants' service area if they are unhappy with the charges or service and need to change providers.[8]

6.  Defendants' West Virginia service is so abysmal that Defendants acknowledged under oath that providing the relief requested by just three individual West Virginia customers would cost them at least $100,000 per customer.[9] Over 100 other West Virginians have sent Notices of Dispute to Defendants regarding their services.

7.  To end run counsel for these West Virginians and their franchisors, Defendants entered a nationwide settlement with counsel for *Vasquez* and the other two federal actions ("Class

---

and ignoring the thousands of customer complaints that resulted." Commission Order (the "Order"), Case No. 21-0515-CTV-SC-GI, (Feb. 9, 2022). According to the Commission Staff, "Suddenlink operates in West Virginia as if it has no regulatory or contractual obligations." Staff Initial Brief ("Staff Br."), Case No. 21-0515-CTV-SC-GI, at 1 (Nov. 3, 2021). The West Virginia cities of Beckley, Charleston, and Elkins added in frustration: "What the Cities, the subscribers, and this Commission have witnessed in this proceeding is the result of abusive monopoly power by a loosely regulated service provider; high rates, poor service, a lack of viable alternatives, and a lack of leverage to be exercised by the [local franchising authority]." Recommendations of the Cities of Beckley, Charleston, and Elkins ("City Rec."), Case No. 21-0515-CTV-SC-GI at 3 (Nov. 3, 2021).

[4] Attachment A Exhibit 2 (the "Franchise Agreement").
[5] Franchise Agreement § 4.2 (Attachment A Exhibit 2).
[6] W.V. Code § 24D-1-22(a-c) (complaints process), (d) (fines for breaching franchise); W.V. Code § 24D-1-13(c) (charges must be just, reasonable, and not unduly discriminatory).
[7] Attachment A Exhibit 3 (the "Application to Intervene").
[8] Attachment A Exhibit 4 (Customer email explaining why she needed to move to Ohio because of Defendants' dismal internet service in West Virginia).
[9] Attachment A Exhibit 5 (the "Alexander Declarations").

Counsel").[10]  Instead of filing the settlement in the Northern District of California or the Eastern District of New York, Class Counsel added a new class representative named Daquis Seale from New Jersey and filed the class action settlement in New Jersey state court,[11] where the preliminary approval order was apparently entered without a hearing.[12]

8.      The named Plaintiffs in the *Seale* complaint are from New Jersey, New York, California, and Connecticut.[13]  None of the named Plaintiffs are from West Virginia, nor do any of the Plaintiffs claim to have purchased Defendants' services in West Virginia.[14]  Class Counsel is not licensed in West Virginia.[15]

9.      The operative complaint filed by Class counsel in New Jersey state court brings "this action under New Jersey, California, and New York law" and no "Claims" exist for any of the 19 other states where class members reside, including West Virginia.[16]  The Complaint then contains eight Counts, none of which are for a violation of West Virginia law or brought by a West Virginian.[17]

10.     On July 3, 2023 (the notorious "take out the trash" news day occurring between a weekend and a holiday when politicians dump bad news to minimize coverage), Defendants emailed class

---

[10] Attachment A Exhibit 6 ("Settlement Agreement").
[11] Attachment A Exhibit 7 (the "*Seale* Complaint").
[12] Attachment A Exhibit 8 (Letter from Counsel to NJ State Court).
[13] *Seale* Complaint ¶¶ 14-21 (Attachment A Exhibit 7).
[14] *Id.*
[15] DeNittis is licensed in NJ, NY, and PA. See https://www.denittislaw.com/lawyers/stephen-denittis/.  Prince is licensed in NJ and PA.  See https://www.denittislaw.com/lawyers/shane-prince/.  Hattis and Lukacs are licensed in CA and WA.  https://www.hattislaw.com/#team.
[16] *Seale* Complaint ¶ 1 (Attachment A Exhibit 7).
[17] *Seale* Complaint ¶¶ 139-256 (COUNT I: Violation of the New Jersey Consumer Fraud Act N.J.S.A. § 56:8-1, *et seq.* (Plaintiff Seale); COUNT II: Violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, *et seq.* (Plaintiff Seale); COUNT III: Violation of the Consumers Legal Remedies Act ("CLRA") California Civil Code § 1750 *et seq.* (Plaintiffs Vasquez, Baker, Lamoree and Major); COUNT IV: Violation of California's False Advertising Law California Business and Professions Code § 17500 *et seq.* (Plaintiffs Vasquez, Baker, Lamoree, and Major); COUNT V: Violation of California's Unfair Competition Law California Business and Professions Code § 17200 *et seq.* (Plaintiffs Vasquez, Baker, Lamoree, and Major); COUNT VI: Violations of New York General Business Law § 349 (Plaintiff Concepcion, Xue Shi Lin, and Friedman); COUNT VII: Violations of New York General Business Law § 350 (Plaintiffs Concepcion, Xue Shi Lin, and Friedman); COUNT VIII: Breach of Contract Through Violation of the Implied Covenant of Good Faith and Fair Dealing (All Plaintiffs)) (Attachment A Exhibit 7).

action notices to class members residing in West Virginia, many of whom Defendants knew were represented by counsel.

11. Specifically, Defendants were repeatedly informed in over 100 Notices of Dispute that:

> The Suddenlink legal department is now on notice that Client is represented by counsel, and any effort to obtain a final resolution of this Dispute must occur through the Firms. In no case shall Suddenlink present Client with any type of waiver or other statement resolving any part of this Dispute (a "Waiver"). The Suddenlink legal department shall instruct any Suddenlink representative interfacing with Client that no Waiver should be sought from or presented to Client.

12. Despite this express instruction to Defendants, Defendants sent class settlement communications to these represented persons in violation of West Virginia and New York Rule of Professional Conduct 4.2.[18] At least one represented person mistakenly opted into the settlement, believing the communication came from her counsel.

13. Defendants also failed to give Madison notice of the Settlement Agreement, which would provide court approval for Defendant Altice to "adjust" these cable TV charges in unlimited amounts,[19] usurping West Virginia's regulatory scheme where the Public Service Commission is to determine whether a charge is unjust, unreasonable, or discriminatory.[20] Specifically, if a New Jersey Court rules that Altice may "adjust" these cable TV charges in the future at any time and in any amount, what authority does the West Virginia Public Service Commission have to rule that such charges are unjust, unreasonable, or discriminatory?

**BASIS FOR REMOVAL: CLASS ACTION FAIRNESS ACT**

---

[18] To the extent Defendants' legal department seeks refuge in the argument that their client sent the settlement notice, this is allowed under New York Rule of Professional Conduct 4.2(b) "provided the lawyer gives reasonable advance notice to the represented person's counsel that such communications will be taking place." To this day, Defendants' counsel has yet to inform the West Virginia customers' counsel about this settlement and the associated notices.

[19] Settlement Agreement ¶ 9.1 ("Altice can continue to charge the Network Fees and TV Fees and no provision of this agreement shall preclude Altice from continuing to charge the Network Fees and TV fees or adjusting the amounts thereof.") (Attachment A Exhibit 6).

[20] W.V. Code § 24D-1-22(a-c) (complaints process), (d) (fines for breaching franchise); W.V. Code § 24D-1-13(c) (charges must be just, reasonable, and not unduly discriminatory).

14.     On September 22, 2023, Intervenor Defendant filed a Motion to Intervene.

15.     This Notice has been timely filed pursuant to 28 U.S.C. § 1446(b).  In a different removal, the law firm representing Defendants here (Mayer Brown) took the position that an intervenor Defendant's removal was untimely because it came more than 30 days after the motion to intervene was filed.  In response, the Court found that "Courts confronting the special issue of the timeliness of removal by an *intervenor* rather than a defendant have held that the thirty day statutory period begins to run either on the date an intervention petition is filed in the state court from which removal is sought or on the date the state court grants the motion to intervene."[21]  Where, as here, the settling parties engaged in flagrant forum shopping, rejecting all three federal courts in which the settled actions were pending to file a settlement action in a state court that had nothing to do with the prior cases in the home of a person who had not previously been a named plaintiff, an intervenor has a reasonable desire to have the motion to intervene decided by a court other than the forum shopped court.[22]

16.     The Superior Court of New Jersey, Mercer Division sits within this judicial district.  28 U.S.C. § 110. This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

---

[21] *Bank of New York Mellon v. Walnut Place LLC*, 819 F. Supp. 2d 354, 358-59 (S.D.N.Y. 2011), *rev'd on other grounds, BlackRock Fin. Mgmt. Inc. v. Segregated Acct. of Ambac Assur. Corp.*, 673 F.3d 169 (2d Cir. 2012).

[22] Two Class Representatives and all Defendants are New York residents, where the *Concepcion* action was pending. *Seale* Complaint ¶¶ 19, 20, 22-24 (Attachment A Exhibit 7).  Intervenor's counsel has no experience with or opinion concerning the New Jersey State Court Judge, but forum shopping on this level deeply undermines the credibility of and confidence in the judicial system. *Hursh v. DST Sys., Inc.*, No. 4:21-09090-NKL, 2023 WL 2754432, at *16 (W.D. Mo. Mar. 31, 2023) ("Such forum-shopping wastes public and private resources and would diminish confidence in both arbitration and the judicial system."), *33 ("To hold otherwise would endorse rampant forum-shopping and gamesmanship, undermine predictability, consistency, and judicial economy, result in the waste of private and judicial resources, and severely undercut the credibility of both the judicial system and the arbitration system that the FAA protects.").

17. The *Seale* Complaint alleges the same violations of California law set forth in the *Vasquez* Removal,[23] but adds violations of New Jersey and New York law.[24] No other state law violations are alleged, including for Connecticut, despite the presence of a Connecticut class representative.

18. As in the *Vasquez* Removal, "The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ('CAFA'), which amended 28 U.S.C. § 1332 to grant federal district courts original jurisdiction over putative class actions with 100 or more class members, where the aggregate amount in controversy exceeds $5 million, and where any member of the class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. §§ 1332(d)(1), (2). As set forth below, this action satisfies each of these requirements for original jurisdiction under CAFA."[25]

19. As in the *Vasquez* Removal, the *Seale* "action meets CAFA's definition of a class action, which is 'any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.' 28 U.S.C. § 1332(d)(1)(B); *see* 28 U.S.C. § 1453(a). The putative class action complaint in this case satisfies this requirement."[26]

---

[23] *Vasquez* Removal ¶ 5 (Attachment A Exhibit 1).
[24] *Seale* Complaint ¶¶ 139-256 (COUNT I: Violation of the New Jersey Consumer Fraud Act N.J.S.A. § 56:8-1, *et seq.* (Plaintiff Seale); COUNT II: Violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, *et seq.* (Plaintiff Seale); COUNT III: Violation of the Consumers Legal Remedies Act ("CLRA") California Civil Code § 1750 *et seq*. (Plaintiffs Vasquez, Baker, Lamoree and Major); COUNT IV: Violation of California's False Advertising Law California Business and Professions Code § 17500 *et seq*. (Plaintiffs Vasquez, Baker, Lamoree, and Major); COUNT V: Violation of California's Unfair Competition Law California Business and Professions Code § 17200 *et seq*. (Plaintiffs Vasquez, Baker, Lamoree, and Major); COUNT VI: Violations of New York General Business Law § 349 (Plaintiff Concepcion, Xue Shi Lin, and Friedman); COUNT VII: Violations of New York General Business Law § 350 (Plaintiffs Concepcion, Xue Shi Lin, and Friedman); COUNT VIII: Breach of Contract Through Violation of the Implied Covenant of Good Faith and Fair Dealing (All Plaintiffs)) (Attachment A Exhibit 7).
[25] *Vasquez* Removal at ¶ 6 (Attachment A Exhibit 1).
[26] *Vasquez* Removal ¶ 7 (Attachment A Exhibit 1).

20.     As in the *Vasquez* Removal, "Suddenlink's records reflect that there are more than 100 members of the putative class… Accordingly, there are at least 100 persons in the putative class, as required by 28 U.S.C. § 1332(d)(5)(B)."[27]

21.     As in the *Vasquez* Removal, "CAFA requires minimal diversity, that is, at least one putative class member must be a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A)." The *Seale* Plaintiffs are citizens of New Jersey, New York, California, and Connecticut. The proposed class consists of "all of Defendants' internet and television customers in the United States", which presumably includes citizens of New Jersey, Arizona, Arkansas, California, Connecticut, Idaho, Kansas, Kentucky, Louisiana, Massachusetts, Mississippi, Missouri, Nevada, New Mexico, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, and West Virginia.[28]

---

[27] *Vasquez* Removal ¶ 8 (Attachment A Exhibit 1).

[28] The Settlement Agreement falsely states the following, but the false statement at least gives the Court some idea of where *Seale* Counsel believes class members reside: "WHEREAS, in the State Action, Plaintiffs alleged that Defendants' actions violate various consumer protection and other laws, including the New Jersey Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. § 56:12-14, et seq.; the New Jersey Uniform Declaratory Judgment Act, N.J.S.A. § 2A:16-51, et seq.; the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521 et seq.; the Arkansas Deceptive Trade Practices Act, Ark. Code §§ 4-88-101 et seq.; the California Consumer Legal Remedies Act, Cal. Civil Code § 1750, et seq.; the California False Advertising Law, Cal. Bus. & Prof. Code§ 17500, et seq.; the California Unfair Competition Law, id. § 17200, et seq.; the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq.; the Idaho Consumer Protection Act, Idaho Code §§ 48-601 et seq.; the Kansas Consumer Protection Act, Kan. Stat. §§ 50-623 et seq.; the Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110 et seq.; the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. §§ 51:1401 et seq.; the Massachusetts Regulation of Business Practices and Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1 et seq.; the Mississippi Consumer Protection Act, Miss. Code §§ 75-24-1 et seq.; the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 et seq.; the Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 41.600 et seq.; the Nevada Deceptive Trade Practices Act, id. §§ 598.0901 et seq.; the New Mexico Unfair Practices Act, N.M. Stat. §§ 57-12-1 et seq.; New York General Business Law §§ 349 and 350; North Carolina General Statute §§ 75-1.1 et seq.; the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01 et seq.; the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 et seq.; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 et seq.; the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code §§ 17-41 et seq.; the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 et seq.; the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-101 et seq.; and additionally constitute a breach of the implied covenant of good faith and fair dealing in certain Defendants' respective customer service agreements" (Attachment A Exhibit 6).

22. As in the *Vasquez* Removal, "Defendant Altice USA, Inc., is a Delaware corporation with its principal place of business in New York, making it a citizen of Delaware and New York. 28 U.S.C. § 1332(c)(1)."[29]

*23*. As in the *Vasquez* Removal, "Defendant Cebridge Telecom CA, LLC, is a citizen of Delaware and New York."[30]

24. As in the *Vasquez* Removal, "Defendant … Cebridge Telecom CA, LLC, is a citizen of Delaware and New York."[31]

25. Intervenor Defendant Madison is a West Virginia municipality, and therefore a citizen of West Virginia.

26. The Class Representatives from New Jersey and California are a citizen of a different state than any Defendant, as is the Class Representative from Connecticut.

27. As in the *Vasquez* Removal, "[T]he claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required 'sum or value of $5,000,000, exclusive of interests and costs.' 28 U.S.C. § 1332(d)(2), (d)(6); see also *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) ("Under § 1332(d)(2), a federal court may exercise diversity jurisdiction over a class that has more than 100 members who are minimally diverse and whose aggregate claims exceed $5 million."). While Suddenlink denies the claims alleged in Plaintiff's complaint and further denies that Plaintiff or any putative class member is entitled to any monetary or other relief, the amount in controversy here satisfies the jurisdictional threshold."[32]

---

[29] *Vasquez* Removal ¶ 9 (Attachment A Exhibit 1).
[30] *Vasquez* Removal ¶ 10 (Attachment A Exhibit 1).
[31] *Vasquez* Removal ¶ 11 (Attachment A Exhibit 1).
[32] *Vasquez* Removal ¶ 13 (Attachment A Exhibit 1).

28. As in the *Vasquez* Removal, "The class period for this action could plausibly encompass the four-year period preceding Plaintiff's filing of his complaint."[33]

29. As in the *Vasquez* Removal, just the members of the putative class residing in California *alone* "have been charged and paid, in the aggregate, over $5 million for Suddenlink's Network Enhancement Fee since February 2019, well within the statute of limitations period for Plaintiff's claims… As the Ninth Circuit explained in *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010), when a plaintiff 'is seeking recovery from a pot that Defendant has shown could exceed $5 million,' the amount in controversy is satisfied for purposed of CAFA jurisdiction. *Lewis*, 627 F.3d at 401."[34]

30. As in the *Vasquez* Removal, "Suddenlink generates on average over $2.5 million of revenue per year from the Network Enhancement Fee. As such, if Plaintiff's request for a permanent injunction prohibiting the collection of this Fee is granted, Suddenlink's lost income will exceed the $5 million threshold in merely two years."[35]

31. As in the *Vasquez* Removal, "[I]n addition to the disgorgement, restitution, and injunctive relief Plaintiff seeks-which already push this case past the $5 million threshold – this Court must also account for a potential attorneys' fees award of at least 25%, further supporting the conclusion that the amount in controversy exceeds $5 million."[36]

32. The Settlement Agreement commits Defendants to pay a Settlement Fund of up to $15 million.[37]

---

[33] *Vasquez* Removal ¶ 14 (Attachment A Exhibit 1).
[34] *Vasquez* Removal ¶ 15 (Attachment A Exhibit 1).
[35] *Vasquez* Removal ¶ 16 (Attachment A Exhibit 1).
[36] *Vasquez* Removal ¶ 17 (Attachment A Exhibit 1).
[37] Settlement Agreement § 1.36 (Attachment A Exhibit 6).

33. Thus, as in the *Vasquez* Removal, "[T]he amount in controversy exceeds $5 million."[38]

## NOTICE TO ADVERSE PARTIES AND STATE COURT

34. In accordance with 28 U.S.C. § 1446(d), Intervenor Defendant will promptly file in the Superior Court of New Jersey, Mercer Division, and serve Plaintiff and Defendants with a copy of a Notice to the Superior Court and Filing of Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.[39]

35. The Court File from the removed action is attached to this Notice of Removal.[40]

## CONCLUSION

36. Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Intervenor Defendant hereby removes this action from the Superior Court of New Jersey, Mercer Division, to the United States District Court for the District of New Jersey.

September 26, 2023

Respectfully Submitted,

_/s/ Adlai J.J. Small_
Adlai J.J. Small (#018362001)
Spiro Harrison & Nelson LLC
363 Bloomfield Avenue, Ste. 2C
Montclair, NJ 07042
973.232.0892

The Webb Law Centre
Charles Webb*
716 Lee St E
Charleston, WV 25301
304-344-9322

TFPC, A Maine Professional Corporation
Talcott J. Franklin*
181 Western Promenade
Portland, Maine 04102
214.642.9191

Sahrbeck, P.C.
Jonathan Sahrbeck*
15 Silva Drive
Cape Elizabeth, ME  04107
207.233.8500

---

[38] *Vasquez* Removal ¶ 18 (Attachment A Exhibit 1).
[39] Attachment A Exhibit 9 (Notice to State Court of Notice of Removal), which is incorporated by reference.
[40] Attachment B (New Jersey State Court File).